UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL KRUEGER,<br><br>        Plaintiff,<br><br>   v.<br><br>SUREWEST COMM., INC., ET AL.,<br><br>        Defendants. | No. 2:13-cv-2098 JAM AC<br><br><br>ORDER |

On March 19, 2014, the court held a hearing on plaintiff's February 7, 2014 motion to compel. Sheri Leonard appeared for plaintiff. William J. Carroll appeared for defendants. On review of the parties' joint statement regarding discovery dispute and the attached exhibits, THE COURT FINDS AS FOLLOWS:

### RELEVANT FACTUAL BACKGROUND

Plaintiff was employed for seventeen years with defendant Surewest Communications, Inc. ("Surewest"). His last position with that organization was Executive Director of Business Sales. First Am. Compl. ("FAC") ¶ 5.

On February 18, 2011, plaintiff and Surewest entered into an agreement entitled Surewest Communications Change in Control Severance Plan ("the Plan"), which provided severance benefits to a select group of management or highly compensated employees, which included plaintiff. Joint Statement re Discovery Dispute ("JSD"), Exs. R-S (ECF No. 34-18 to 34-19).

1

Under the Plan, plaintiff was set to receive various and additional payments and benefits if he experienced a "Qualifying Termination," defined as ". . . a termination of your employment . . . by you for Good Reason and where you Termination Date occurred during the Protected Period or within 150 days after the end of the Protected Period." JSD, Ex. S (ECF No. 34-19). The "Protected Period" was defined as within one year following a Change in Control. Id.

The Plan defined "Good Reason" as ". . . the occurrence of any one or more of the following without your express consent: (i) material reduction of your authority, duties, or responsibilities as they existed immediately prior to the Change in Control. . . ." JSD, Ex. S (ECF No. 34-19). The Plan also stated that the participant had to give written notice that a Good Reason event had occurred within ninety days of the initial occurrence of the alleged Good Reason event. Id. The employer then had thirty days to cure or remedy the issues in the notice. Id. Finally, the Plan stated that if the Good Reason was not timely cured or remedied, then the participant had to resign his employment within sixty days of the date that the notice was provided in order to obtain the severance. Id.

On July 2, 2012, defendant Consolidated Communications Services Company acquired Surewest pursuant to a merger transaction. FAC ¶ 8. This merger qualified as a Change in Control. Id. Thereafter, plaintiff claims that he learned that his job duties and responsibilities would be significantly altered following the merger such that he had a "Good Reason" to resign and receive severance payment and benefits via the Plan. Id. ¶ 10.

On August 20, 2012, and pursuant to the Plan, plaintiff sent a notice that a Good Reason had occurred. FAC ¶ 11.

On September 18, 2012, defendants responded to plaintiff's notice, asserting that plaintiff's job duties were not significantly altered and/or that it cured the Good Reason pursuant to the Plan. See JSD, Ex. T (ECF No. 34-20).

On September 20, 2012, plaintiff submitted his resignation. JSD, Ex. P (ECF No. 34-16).

On January 28, 2012, Surewest's Chief Financial Officer, Steven Childers, denied plaintiff's claim for severance payments and benefits on behalf of the Plan. FAC ¶ 13; see also JSD, Ex. N (ECF No. 34-14). Plaintiff appealed this determination. On May 16, 2013, the

1  Review Panel, which was comprised of Childers, Ryan Whitlock, and David Herrick, sent

2  plaintiff a final rejection of benefits.  JSD, Ex. O (ECF No. 34-15).

## PROCEDURAL BACKGROUND

This action was initiated on October 10, 2013 and is proceeding on a first amended complaint filed November 25, 2013 asserting violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.  ECF No. 15.

On December 9, 2013, the Honorable John A. Mendez signed the parties' Stipulated Specialized Case Management Order – ERISA Action.  ECF No. 19.  Per the terms of this stipulation, defendants shall produce the governing plan document, the summary plan description, any other relevant plan procedures not contained in the aforementioned documents, and the administrative record in this matter.  Other than these documents, "[n]o further formal pretrial discovery will be had in this matter unless otherwise ordered by the Court."  Id. ¶¶ 1-2.

On January 9, 2014, a stipulated scheduled order was signed by Judge Mendez, and on March 3, 2014, he signed a stipulated protective order.  The parties have agreed to have this case decided on cross-motions for summary judgment.

## DISCUSSION

A.    Discovery Dispute Background

Plaintiff asserts that he is entitled to discovery in light of a structural conflict of interest that exists due to the employer serving as the plan administrator.  Because of the nature of this action and the Case Management Order limiting discovery, plaintiff sent a meet and confer letter outlining the law regarding discovery in ERISA actions and attaching a rough draft of the topics and questions that he wanted to pose to defendants.  JSD, Ex. C.  On February 5, 2013, plaintiff sent a final version of the document requests and special interrogatories.[1]  Id., Ex. F.

Defendants believe that the discovery requests are inappropriate because the structural conflict of interest clearly did not taint the payment of severance benefits under the Plan and

---

[1] Plaintiff has since abandoned the following Document Requests: Nos. 5- 6, 8-10, 12-14, 22 and limit 27 (to any communication outside of the panel members).  He has also abandoned the following Special Interrogatories: 5, 12, and 13.  See JSD, Ex. M (ECF No. 34-13).

1 because the requests are a mere fishing expedition in an attempt to generate some procedural
2 irregularity over the one claim denied by the Plan.  Plaintiff, on the other hand, believes that
3 discovery as to all elements evidencing procedural irregularity is appropriate.
4 The parties have adequately met and conferred.

5 B.      Analysis

6 Plaintiff argues that a structural conflict exists and that, accordingly, it is entitled to delve
7 into the nature, extent and effect of the conflict.  Defendants respond that plaintiff must show
8 more than the mere presence of a conflict; he must also show that the conflict influenced the
9 defendants' decision.

10 Generally, litigants in a civil action may obtain discovery regarding "any nonprivileged
11 matter that is relevant to any party's claim or defense. . . ."  Fed. R. Civ. P. 26(b)(1).  In an
12 ERISA case such as this one, however, discovery plays a far more limited role because the
13 primary purpose of ERISA is "to provide a method for workers and beneficiaries to resolve
14 disputes over benefits inexpensively and expeditiously."  Boyd v. Bert Bell/Pete Rozelle NFL
15 Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005).

16 Whether discovery is appropriate in an ERISA case "is directly related to the standard of
17 review employed by the Court."  Santos v. Quebecor World Long Term Disability Plan, 1:08-cv-
18 0565 AWI GSA, 254 F.R.D. 643, 647 (E.D. Cal. 2009).  When an ERISA plan grants discretion
19 to the plan administrator, the court reviews the benefits decision for an abuse of discretion.  Abatie
20 v. Alta Health & Life Ins. Co., 458 F.3d 955, 967 (9th Cir. 2006) (en banc) (abrogated on other
21 grounds).  While abuse of discretion review is typically confined to the administrative record, the
22 "court may, in its discretion, consider evidence outside the administrative record to decide the
23 nature, extent, and effect on the decision-making process of any conflict of interest."  Abatie, 458
24 F.3d at 970.  A structural conflict of interest exists where the insurer acts as both the plan
25 administrator and the funding source for benefits.  Id. at 965.  It is well-established that it is
26 within the court's discretion to permit discovery regarding a structural conflict of interest of an
27 ERISA plan administrator and its affect, if any, on its decision in the case.  See Burke v. Pitney
28 Bowes Inc. Long–Term Disability Plan, 544 F.3d 1016, 1028 n.15 (9th Cir. 2008) ("Whether to

1 permit discovery into the nature, extent, and effect of the Plan's structural conflict of interest is
2 also a matter within the district court's discretion."). The parties agree that the standard of review
3 in this matter is the arbitrary and capricious (i.e., abuse of discretion) standard.

4 Central to the parties' dispute is the United States Supreme Court's decision in
5 Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). In Glenn, which involved an insurance
6 company plan administrator, the Court held that a structural conflict of interest exists where an
7 insurance company or an employer both funds a plan and evaluates the claims. Id. at 112. The
8 Court then turned to the question of how the existence of such a conflict affects judicial review of
9 a discretionary benefit determination. Id. at 115. The Court explained that a conflict of interest is
10 one of many factors to be considered in determining the lawfulness of a benefits denial, and that
11 the weight to be given the conflict in a specific case depends on many factors, some that could be
12 of great importance and some that should prove less important. Id. at 116-17. These factors may
13 include "circumstances [that] suggest a higher likelihood that [the conflict] affected the benefits
14 decision, including, but not limited to, cases where an insurance company administrator has a
15 history of biased claims." Id. 117. On the other hand, there may be circumstances where "the
16 administrator has taken active steps to reduce potential bias and to promote accuracy, for
17 example, by walling off claims administrators from those interested in firm finances, or by
18 imposing management checks that penalize inaccurate decisionmaking irrespective of whom the
19 inaccuracy benefits." Id.

20 Defendants argue first that plaintiff's reliance on Glenn and other cases is inapposite
21 because those cases concern insurance company plan administrators, whereas here the
22 administrator of the plan is the employer. In support, defendants refer to the Glenn dissent, which
23 objected, inter alia, to the majority's holding insofar as it purported to extend its analysis beyond
24 the specific facts of the case – that is, finding that a structural conflict of interest also exists when
25 an employer both funds a plan and evaluates the claims, even though the plan administrator in the
26 case before the Court was an insurance company. See Glenn, 554 U.S. at 127. But not only is
27 Glenn unambiguous in holding that a structural conflict of interest exists in the context of
28 employer-plan administrators, the Ninth Circuit has also applied Glenn to actions involving an

1 employer-plan administrator.  See, e.g., Sluimer v. Verity, Inc., 606 F.3d 584 (9th Cir. 2010).  See
2 also Robello v. FedEx Exp., 2011 WL 5238810 (D. Haw. 2011).

3     Defendants next argue that, assuming Glenn establishes the principle that a court should
4 weigh a conflict of interest in every case, it does not necessarily follow that discovery is
5 warranted in every case.  See, e.g., Ford v. Motorola, Inc., 298 Fed. Appx. 560, 561 (9th Cir.
6 2008).  In support of their position that discovery is not warranted on the facts here, defendants
7 claim that they have already provided plaintiff with documents showing that the Plan has only
8 denied one claim in severance benefits—plaintiff's $200,000 claim—in light of the millions of
9 dollars of severance benefits paid out, and that benefits were denied to plaintiff because it was
10 determined that he resigned for a new position after defendants timely cured the Good Reason.
11 But these and other factors go to the determination of how much *weight* to give to a structural
12 conflict of interest, not to whether or not a plaintiff may obtain discovery to determine the
13 conflict's nature, extent and effect on the Plan's decision.

14     Moreover, the court is not persuaded by defendants' contention that, in order to obtain the
15 requested discovery, plaintiff must make a preliminary showing of a conflict of interest beyond
16 the existence of a structural conflict, which defendants cannot seriously argue does not exist in
17 this case.  A number of courts in this circuit have authorized discovery in ERISA cases without
18 requiring any such preliminary showing.  See, e.g., Klein, 806 F. Supp. at 1127; Harper v. UNUM
19 Life Ins. Co., 1:06-cv-0893 AWI DLB, 2007 WL 1792004, at *5  (E.D. Cal. June 19, 2007)
20 (plaintiff entitled to discovery exploring structural conflict of interest, but not discovery aimed at
21 exposing how and why the decisions were made or whether the plan's decision was "correct");
22 Frost v. Metropolitan Life Ins. Co., 414 F. Supp. 2d 961 (C.D. Cal. 2006) (discovery permitted
23 but requested scope went beyond alleged conflict); Klund v. High Technology Solutions, Inc.,
24 417 F. Supp. 2d 1155 (S.D. Cal. 2005) (denying discovery requests as overbroad and not relevant
25 whether the decision making process was affected by dual role as insurer and administrator).

26     In any event, the court finds that plaintiff here has made a sufficient showing to obtain
27 information through discovery relating to the extent and nature of the conflict.  Groom v.
28 Standard Ins. Co., 492 F. Supp. 2d 1202, 1205-06 (C.D. Cal. 2007) ("relevant inquiries might

include inquiries designed to obtain 'evidence of malice, of self-dealing, or of a parsimonious claims-granting history'") (quoting Abatie, 458 F.3d at 968); see also Leu v. Cox Long-Term Disability Plan, 2009 WL 2219288, at *4 (D. Ariz. July 24, 2009) (allowing discovery into "incentivized parsimonious claim management."); Sheakalee v. Fortis Benefits Ins. Co., 2008 WL 4279383, at *3 (E.D. Cal. Sept. 16, 2008).

Defendants are correct, however, that discovery cannot be unlimited and that plaintiff has no right to engage in extensive fishing expeditions. Leu, 2009 WL 2219288 at *3; see also Santos v. Quebecor World Long Term Disability Plan, 1:08-cv-0565 AWI GSA, 254 F.R.D. 643, 648 (E.D. Cal. 2009). As noted in Klein, "[c]ourts are still exploring and defining the appropriate limits on discovery into the structural conflict." 806 F. Supp. 2d at 1127. In Wilcox v. Metropolitan Life Ins. Co., the court provided the following instructive list of areas into which a plaintiff could conduct discovery:

> (1) [W]hether any of the employees or consultants involved in deciding Plaintiff's claim had a financial incentive to deny the claim; (2) Defendant's general approval and termination rates for long-term disability claims, and separately, for long-term disability claims involving [plaintiff's particular medical issue]; (3) steps Defendant has taken to reduce bias and promote accuracy, such as walling off claims administrators from those interested in firm finances; and (4) any factors or evidence considered by Defendant in denying Plaintiff's claim that are not contained in the administrative record. Defendant shall also produce to Plaintiff any evidence outside the administrative record that Defendant intends to use in showing that the structural conflict did not affect its decision in this case.

Zewdu v. Citigroup Long Term Disability Plan, 264 F.R.D. 622, 627 (N.D. Cal. Feb. 12, 2010) (quoting Wilcox, 2009 WL 57053, at *3 (D. Ariz. Jan. 8, 2009)).

To this end, the undersigned will order defendants to provide responses to Special Interrogatories 1-4, 7-11, 16-19, and 21, and to Document Requests 1-4, 19, 23-26, and 30-33. As to Document Requests 20-21, the court will limit these requests to the number of applications that were filed by other employees under the Surewest Communications Change in Control Severance Plan, the amount of the claims, whether or not the claims were granted, and the individuals involved in the processing of the claims. The court concludes that plaintiff's

remaining discovery requests are overbroad and/or not relevant to whether defendants' decision-making process was affected by its dual role as employer and administrator.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's February 7, 2014 motion to compel (ECF No. 28) is granted in part; and

2. Within fourteen (14) days from the date of this order, defendants shall provide responses to Special Interrogatories 1-4, 7-11, 16-19, and 21, and to Document Requests 1-4, 19, 23-26, and 30-33.  As to Document Requests 20-21, defendants need only submit documents showing how many applications were filed by other employees under the Surewest Communications Change in Control Severance Plan, the amount of the claims, whether or not the claims were granted, and the individuals involved in the processing of the claims.

DATED: March 19, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE