1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   PAUL KREUGER,                      No.  2:13-cv-02098 JAM AC

12             Plaintiff,

13        v.                            **ORDER GRANTING DEFENDANTS'
                                        MOTION FOR SUMMARY JUDGMENT AND**
14   SUREWEST COMMUNICATIONS,           **DENYING PLAINTIFF'S CROSS-MOTION**
     INC.; CONSOLIDATED                 **FOR SUMMARY JUDGMENT**
15   COMMUNICATIONS SERVICES
     COMPANY; SUREWEST
16   COMMUNICATIONS CHANGE IN
     CONTROL SEVERANCE PLAN; and
17   DOES 1-50,

18             Defendants.

19

20        Defendants SureWest Communications, Inc., Consolidated

21   Communications Services Company, and SureWest Communications

22   Change in Control Severance Plan's (collectively "Defendants")

23   Motion for Summary Judgment (Doc. #40) and Plaintiff Paul

24   Kreuger's ("Plaintiff") Cross-Motion for Summary Judgment (Doc.

25   #55) are before the Court.  Plaintiff opposed Defendants' motion

26   (Doc. #47) and Defendants opposed Plaintiff's motion (Doc. #63).

27   For the reasons set forth below, Defendants' motion is GRANTED

28

                                    1

1   and Plaintiff's motion is DENIED.[1]

2

3             I.   FACTUAL AND PROCEDURAL BACKGROUND

4        Plaintiff was employed with Defendant SureWest

5   Communications, Inc. ("SureWest") for approximately 17 years.

6   Plaintiff's Response to Defendants' Statement of Facts ("PRSOF")

7   (Doc. #48) ¶ 3.  SureWest sponsored a severance plan, the

8   "SureWest Communications Change in Control Severance Plan and

9   Summary Plan Description" ("the Plan"), which was designed to

10  provide severance benefits to a select group of highly

11  compensated employees in the event of a company change in

12  control.  PRSOF ¶ 1-2.  Plaintiff was a covered employee under

13  the Plan.  PRSOF ¶ 6.  On July 1, 2012, Defendant Consolidated

14  Communications Services Company ("Consolidated") acquired

15  SureWest, which constituted a change in control within the

16  meaning of the Plan.  Defendants' Statement of Facts ("DSOF"),

17  Ex. C.

18       Under the Plan, Plaintiff was entitled to severance benefits

19  if, following a change in control, he experienced a "Qualifying

20  Termination."  PRSOF ¶ 11.  In relevant part, the Change in

21  Control Agreement ("CIC Agreement") provides that a "Qualifying

22  Termination" includes the "termination of your employment . . .

23  by you for Good Reason and where your Termination Date occurred"

24  within one year plus 150 days after the change in control.  DSOF,

25  Ex. B at 4.  The CIC Agreement defines "Good Reason" as, among

26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for August 6, 2014.

                              2

other things, a "material reduction of your authority, duties, or responsibilities as they existed immediately prior to a Change in Control" or a "material reduction of your base salary, annual bonus opportunity or long-term incentive opportunity as they existed immediately prior to a Change in Control[.]"  DSOF, Ex. B at 3.  The CIC Agreement further provides that an employee must give SureWest written notice that a Qualifying Termination for Good Reason has occurred within 90 days of the initial occurrence of the Good Reason event.  DSOF, Ex. B at 3.  Within 30 days of the Good Reason Notice, SureWest may attempt "to cure or remedy the item(s) in the Good Reason Notice so that 'Good Reason' will not have formally occurred with respect to the event in question."  DSOF, Ex. B at 3.  The CIC Agreement provides that if SureWest fails to timely cure the Good Reason, the covered employee must resign within 60 days of the date of the Good Reason Notice, in order to obtain the benefits of the Plan. DSOF, Ex. B at 3.

     On August 20, 2012, Plaintiff submitted a Good Reason Notice, requesting severance benefits under the Plan.  DSOF, Ex. C.  In this notice, Plaintiff claimed that there had been "a Good Reason occurrence, whereby there has been a reduction in my duties and responsibilities."  DSOF, Ex. C.  Plaintiff's alleged Good Reason stemmed from the removal of the Kansas City market from his duties and responsibilities.  DSOF, Ex. M.  On August 30, 2012, Defendants offered Plaintiff additional responsibility for the "General Manager IL-Business Systems" position.  PRSOF ¶ 21.  Plaintiff, continuing to believe that a material reduction in duties and responsibilities had occurred, resigned his

position with SureWest on September 20, 2012.  PRSOF ¶ 26.

On October 24, 2012, Plaintiff filed his initial claim for benefits under the Plan.  PRSOF ¶ 28.  Steven Childers, the Chief Financial Officer for Consolidated, served as the Plan's Claims Administrator ("the Administrator").  PRSOF ¶ 40.  On January 28, 2013, the Administrator denied Plaintiff's claim.  PRSOF ¶ 31. This initial denial set forth two reasons for its determination. PRSOF ¶ 32.  First, it concluded that Plaintiff had not experienced a material reduction in duties and responsibilities as of August 20, 2012, because Consolidated had not yet determined the full scope of Plaintiff's post-change in control responsibilities.  DSOF, Ex. K.  Second, it concluded that, even if Plaintiff had experienced a material reduction in duties and responsibilities, it had been cured by Consolidated's offer to increase Plaintiff's responsibilities to include the Illinois market.  DSOF, Ex. K.

On March 20, 2013, Plaintiff appealed the Administrator's denial.  PRSOF ¶ 37.  The Review Panel consisted of the Administrator, and two other Consolidated employees.  PRSOF ¶ 40. On May 16, 2013, the Review Panel issued a final determination that Plaintiff was not entitled to severance benefits under the Plan.  PRSOF ¶ 40.  In addition to the reasons stated in the Administrator's initial denial, the Review Panel also determined that Plaintiff was not entitled to severance on the basis of "material reduction in compensation" for two reasons.  DSOF, Ex. M.  First, Plaintiff had not provided Good Reason Notice on the grounds of "material reduction in compensation," in addition to "material reduction in duties and responsibilities."  DSOF, Ex.

4

1   M.   Second, Plaintiff had not experienced a material reduction in

2   compensation for the 2012 calendar year, and his post-2012

3   compensation package had not yet been finalized.  DSOF, Ex. M.

4       On November 25, 2013, Plaintiff filed the amended complaint

5   (Doc. #15) in this Court.  The amended complaint alleges one

6   cause of action, for violation of the Employee Retirement Income

7   Security Act of 1974 ("ERISA").

8

9                         II.   OPINION

10      A.   Legal Standard

11      The Ninth Circuit has held that, "[w]here the decision to

12  grant or deny [ERISA] benefits is reviewed for abuse of

13  discretion, a motion for summary judgment is merely the conduit

14  to bring the legal question before the district court and the

15  usual tests of summary judgment, such as whether a genuine

16  dispute of material fact exists, do not apply."  Bendixen v.

17  Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).  However,

18  "[c]onsideration of a conflict of interest is . . . an exception

19  to this feature of ERISA cases as 'the traditional rules of

20  summary judgment' do apply."  Stephan v. Unum Life Ins. Co. of

21  Am., 697 F.3d 917, 930 (9th Cir. 2012).  Therefore, "[a]s to

22  issues regarding the nature and impact of a conflict of interest,

23  summary judgment may only be granted if after viewing the

24  evidence in the light most favorable to the non-moving party,

25  there are [no] genuine issues of material fact."  Id.

26      Accordingly, with regard to the extent and nature of the

27  Administrator's and the Panel's structural conflict of interest,

28  the evidence must be viewed in the light most favorable to the

5

1   non-moving party.  However, with regard to the reasonableness of

2   the Administrator's and the Panel's findings, the usual rules of

3   summary judgment do not apply.

4       B.   Evidentiary Objections

5       Defendants argue that the Kreuger Declaration should be

6   stricken as "an attempt to expand the administrative record[.]"

7   Defs.' Opp. at 5.  Defendants maintain that the Kreuger

8   Declaration "contains nothing that relates to the extent and

9   nature of the Administrator's conflict[.]"  Id.  The Ninth

10  Circuit has held that courts "may consider evidence beyond that

11  contained in the administrative record that was before the plan

12  administrator, to determine whether a conflict of interest exists

13  that would affect the appropriate level of judicial scrutiny."

14  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th

15  Cir. 2006).  Moreover, the Ninth Circuit has held that courts

16  must evaluate the degree to which a structural conflict of

17  interest has tainted an administrator's evaluation of an ERISA

18  claim.  Abatie, 458 F.3d at 963.  Therefore, as the Kreuger

19  Declaration addresses the degree to which the structural conflict

20  impacted the Administrator's and the Panel's evaluation of his

21  claim, Defendants' Motion to Strike is DENIED.

22      Defendants also object generally that "Plaintiff's

23  declaration contains a significant amount of hearsay and/or many

24  of his statements lack foundation."  Defs.' Opp. at 5.

25  Defendants' objections are overruled since they lack specificity.

26  Moreover, at the summary judgment stage, such evidentiary

27  objections are usually unnecessary and better saved for argument

28  within the briefs.  See Burch v. Regents of Univ. of California,

6

1  433 F. Supp. 2d 1110, 1119 (E.D.Cal. 2006).

2      C.   Discussion

3          1.   Standard of Review

4      Plaintiff argues that the Court should apply a "heightened

5  abuse of discretion" standard of review, because of the

6  structural conflict of interest in the Administrator's and Review

7  Panel's role.  Pl.'s Mot. at 4.  Plaintiff argues that the

8  conflict of interest should be given particular weight in this

9  case, because the Administrator and Review Panel "allowed their

10 conflict of interest to significantly impact their decision to

11 deny benefits."  Pl.'s Mot. at 5.  Defendants acknowledge the

12 existence of a structural conflict of interest, but urge the

13 Court to apply a "low level of skepticism" to the Administrator's

14 and Review Panel's decisions, because the conflict of interest

15 was minimal.  Defs.' Opp. at 3.  Defendants argue that the

16 limited discovery demonstrates that none of the three individuals

17 on the Review Panel stood to benefit financially by denying

18 Plaintiff's claim.  Defs.' Opp. at 4.

19     The standard of review for an ERISA claim is "abuse of

20 discretion" if the plan unambiguously provides discretion to the

21 plan administrator.  Abatie v. Alta Health & Life Ins. Co., 458

22 F.3d 955, 963 (9th Cir. 2006).  The "abuse of discretion

23 standard, however, can be 'heightened' by the presence of a

24 conflict of interest."  Sluimer v. Verity, Inc., 606 F.3d 584,

25 587 (9th Cir. 2010).  A structural conflict of interest exists

26 where an employer both funds the benefits from an ERISA plan and

27 adjudicates claim eligibility because "every dollar provided in

28 benefits is a dollar spent by . . . the employer; and every

1   dollar saved . . . is a dollar in [the employer's] pocket."

2   Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008) (internal

3   citations omitted).

4       Defendants do not dispute that a structural conflict of

5   interest existed in this case, as the Review Panel consisted of

6   Steven Childers, the Chief Financial Officer of Consolidated, and

7   two of his subordinates.  Defs.' Opp. at 2; PRSOF ¶ 40.

8   Accordingly, Consolidated both funded ERISA benefits and was

9   responsible for adjudicating ERISA claims.  However, Plaintiff

10  does not dispute that "[t]he decision to pay or deny the

11  severance benefits sought by Plaintiff had no bearing on the

12  bonus compensation paid to the three individuals comprising the

13  Review Panel[.]"  PRSOF ¶ 52.  Moreover, the three Panelists were

14  not company "insiders" and owned less than one third of one

15  percent of the company's outstanding shares, combined.  DSOF, Ex.

16  N at 2-4.  Therefore, it cannot be said that any of the Panelists

17  had a significant financial incentive to deny Plaintiff's claim.

18  Nevertheless, the Court must incorporate this structural conflict

19  into its "abuse of discretion" standard.  Metro. Life, 554 U.S.

20  at 112.

21      However, "[t]he level of skepticism with which a court views

22  the conflicted administrator's decision" varies based on the

23  totality of the circumstances of the case.  Abatie, 458 F.3d at

24  968.  The Ninth Circuit has instructed that courts should:

25      "weigh a conflict more heavily if, for example, the
        administrator provides inconsistent reasons for denial;
26      fails adequately to investigate a claim or ask the
        plaintiff for necessary evidence; fails to credit a
27      claimant's reliable evidence; or has repeatedly denied
        benefits to deserving participants by interpreting plan
28      terms incorrectly or by making decisions against the

                                8

1  weight of evidence in the record."  <u>Abatie</u>, 458 F.3d at

2  968.

3  Thus, to some extent, determining the proper standard of review

4  in this case requires that the Court consider the merits of

5  Plaintiff's argument that the Panel's analysis and final decision

6  was unreasonable.

7      Plaintiff argues that the Court must view the Panel's

8  decision with a high level of skepticism, because it failed to

9  follow the actual language of the Plan, found facts that are not

10 in the Administrative Record, ignored uncontested evidence

11 submitted by Plaintiff, and failed to remove or decrease the

12 structural conflict of interest that existed.  Pl.'s Opp. at 7.

13 Plaintiff contends that there are seven errors the Panel made,

14 which he believes should compel the Court to use a "heightened

15 abuse of discretion" standard of review.  Pl.'s Opp. at 7.  Each

16 is discussed below.[2]

17     First, Plaintiff argues that the Panel failed to follow the

18 actual language of the Plan, by adding a requirement that a

19 material reduction in responsibilities be "sufficiently final" to

20 constitute a Good Reason for resignation.  Pl.'s Opp. at 8.  As

21 Plaintiff notes, the Panel found that, "as of the time of the

22 Good Reason Notice, Consolidated had not determined the extent of

23 ─────────────
[2] As an important aside, the Court notes that the Panel's final
24 denial of Plaintiff's claim (rather than the Administrator's
   initial, appealable denial) is the relevant determination for the
   Court's analysis.  The Administrator's opinion and Panel's
25 opinion are substantially similar, although the Panel's opinion
   addresses the additional alleged Good Reason basis of "material
26 reduction in compensation."  Accordingly, except when necessary
   to differentiate between the two, the Court addresses the
27 parties' arguments in the context of the Panel's final opinion
   denying Plaintiff's claim.

28

your post-CIC duties or responsibilities with sufficient finality
so as to amount to a material reduction of your authority,
duties, or responsibilities." DSOF, Ex. M at 6.  The Panel
explained that, although Plaintiff would not retain his
responsibilities in the Kansas City market, "Consolidated
continued to evaluate options for expanding [Plaintiff's] duties
and responsibilities in other areas" and, as of Plaintiff's Good
Reason Notice, "had not yet made any final determination in that
regard."  Id.  Contrary to Plaintiff's argument, this is a
reasonable interpretation of the terms of the Plan.  The Panel
did not determine that a material reduction in Plaintiff's
responsibilities had occurred, but that it was not "sufficiently
final."  Rather, the Panel determined that no material reduction
had occurred in the first place, because Consolidated was still
in the process of expanding Plaintiff's duties in other markets.

Plaintiff's argument that the "sufficiently final"
requirement is incompatible with the 90-day notice requirement is
unpersuasive.  Under the Plan, Plaintiff was required to file
Good Reason Notice "within ninety days of the initial occurrence
of such alleged Good Reason event."  DSOF, Ex. B at 3.  Plaintiff
argues that he would be time-barred from asserting a claim if he
had waited for Consolidated to finalize his job responsibilities,
but this is not the case.  Pl.'s Opp. at 8.  Under the terms of
the Plan, the 90-day clock is only triggered by the initial
occurrence of *the Good Reason event itself*.  DSOF, Ex. B at 3.
Therefore, if (as was found by the Panel) no material reduction
of responsibilities could occur until Plaintiff's
responsibilities were finalized, the 90-day clock could not begin

1  to run until the finalization of those responsibilities.  The

2  "initial occurrence" would not be the removal of Plaintiff's

3  Kansas City duties, but the onset of Plaintiff's Good Reason for

4  material reduction in duties, once those duties were finalized.

5  Therefore, the Panel's interpretation of the Plan was internally

6  consistent.  Accordingly, this factor does not weigh in favor of

7  a "heightened" abuse of discretion standard of review.

8       Second, Plaintiff argues that the Panel "stated as a fact an

9  event that is found nowhere in the Administrative Record and is

10  actually contradicted by Plaintiff's evidence in the

11  Administrative Record."  Pl.'s Opp. at 9.  Plaintiff notes that,

12  in the Panel's discussion of the additional Illinois position, it

13  explained that "[t]hese responsibilities were described to you by

14  Mr. Udell and subsequently detailed in a document entitled 'Job

15  Description – General Manager IL Business Systems' sent to you on

16  September 4, 2012."  DSOF, Ex. M at 6.  Plaintiff argues that

17  none of the documents relied upon by the Panel contain evidence

18  that Mr. Udell explained the Illinois responsibilities to

19  Plaintiff, and that Plaintiff submitted information that Mr.

20  Udell was "unprepared to talk about the details of the [Illinois]

21  job responsibilities."  Pl.'s Opp. at 11; DSOF, Ex. L at 2.

22  Defendants appear to concede that none of the materials relied

23  upon by the Panel reference Mr. Udell's in-person explanation of

24  the Illinois responsibilities to Plaintiff.  However, Defendants

25  argue that this has minimal significance, because the Panel's

26  determination that Plaintiff received a full description of the

27  Illinois position, via mail, is fully supported by the record.

28  Defs' Opp. at 8; DSOF, Ex. D; DSOF, Ex. F.  The Court concludes

1  that the Panel's finding that Mr. Udell explained the Illinois

2  responsibilities to Plaintiff was unsupported by the record.

3  However, the record does reflect that Mr. Udell spoke with

4  Plaintiff about the Illinois position (albeit somewhat

5  superficially) and that Plaintiff subsequently received a full

6  description of the Illinois position in the mail.  DSOF, Ex. D;

7  DSOF, Ex. F.  This factor weighs slightly in favor of a

8  "heightened" abuse of discretion standard of review.

9      Third, Plaintiff argues that the Administrator's conflict of

10  interest was demonstrated by the fact that he "failed to explain

11  his reasoning for finding that a 'cure' occurred."  Pl.'s Opp. at

12  11 (citing Bendixen v. Standard Ins., 195 F.3d 939, 944 (9th Cir.

13  1999)).  As noted above, the relevant determination is that of

14  the Review Panel, not the Administrator.  Although the

15  Administrator's analysis of the Illinois "cure" was rather

16  perfunctory, the Review Panel explained this finding in adequate

17  detail.  Specifically, the Review Panel concluded that the

18  Illinois position provided:

19      "increased overall revenue accountability (with
        estimated revenues from Illinois operations exceeding
20      those from Kansas City commercial operations by
        approximately $500,000) and significant growth
21      opportunities in the fiber market as well as the
        opportunity to manage the full profit and loss of the
22      business as a General Manager in Consolidated's
        headquarters market, with greater access to and
23      visibility with Consolidated's senior executives."
        DSOF, Ex. M at 6.

24  Accordingly, the Court concludes that the Review Panel explained

25  its reasoning for finding that any material reduction in

26  responsibilities was "cured" by the Illinois position, and this

27  factor weighs against the use of a "heightened" abuse of

28

discretion standard of review.

Fourth, Plaintiff argues that the Panel "ignored information from Plaintiff and relied upon unsupported information from Defendants to make [its] decision." Pl.'s Opp. at 11. Plaintiff notes that the Panel's comparative finding between the Kansas City responsibilities and the Illinois responsibilities is drawn, verbatim, from a letter written to Plaintiff by Steven Shirar, Senior Vice President of Consolidated. Pl.'s Opp. at 12. However, the Panel was entitled to conclude that the Senior Vice President of Consolidated would have knowledge of both the Kansas City and the Illinois positions, and to credit his comparative findings. Similarly, Plaintiff notes that the Panel "did not even acknowledge or address . . . Plaintiff's information as to why the Illinois offer did not cure the removal of Kansas City." Pl.'s Opp. at 12. Plaintiff refers to his claims, submitted in his request for review of the Administrator's initial findings, that "[t]he Illinois offer was in one of Consolidated's . . . territories experiencing no growth and included operational responsibilities that were not in line with [Plaintiff's] sales executive career responsibilities." Pl.'s Opp. at 12 (citing DSOF, Ex. L at 2). However, the Panel was not required to address each and every one of Plaintiff's concerns. It determined that the Illinois position was an adequate substitute for Kansas City – based on estimated revenues, growth opportunities in the fiber market, and proximity to Consolidated headquarters – and implicitly rejected Plaintiff's objections. The Panel was entitled to define "responsibilities" in terms of "estimated revenues," rather than Plaintiff's proposed emphasis

1    on growth and sales responsibilities (as opposed to operational

2    responsibilities).  Under the deferential standard of review, the

3    Court must only determine whether the Panel's findings were

4    reasonable, and should not critique its preferred methodology.

5    See Alaska Survival v. Surface Transp. Bd., 705 F.3d 1073, 1088

6    (9th Cir. 2013).  Therefore, this factor weighs against the use

7    of a "heightened" abuse of discretion standard of review.

8         Fifth, Plaintiff argues that the Panel's conflict of

9    interest is demonstrated by its "determination that the addition

10   of Illinois 'cured' Kansas City without any information on Kansas

11   City."  Pl.'s Opp. at 13.  As Plaintiff acknowledges, the Panel

12   reviewed a Job Description for Plaintiff's former position with

13   SureWest, "Executive Director, Business Sales."  Leonard Dec.,

14   Ex. 1 at 0098.  Although this four-page document does not

15   specifically describe the Kansas City market, it does provide a

16   detailed picture of Plaintiff's duties and responsibilities in

17   his pre-acquisition position at SureWest.  Id.  Moreover, as

18   discussed above, the Panel made specific factual findings about

19   the differences between the Kansas City market and the Illinois

20   market.  DSOF, Ex. M at 6.  Whether it considered the raw data

21   itself, or simply credited the finding of Senior Vice President

22   Shirar, the Panel did not make its determination "without any

23   information on Kansas City."  Pl.'s Opp. at 13.  Accordingly,

24   Plaintiff's conclusion that the Panel failed to consider any

25   information on the Kansas City market is inaccurate, and this

26   factor weighs against a "heightened" abuse of discretion standard

27   of review.

28        //

1    Sixth, Plaintiff argues that "no steps were taken to remove
2    any structural conflict of interest and the 'full and fair'
3    review was corrupted by the fact that the review panel was
4    comprised of the plan administrator and his lower level
5    subordinates."  Pl.'s Opp. at 14.  Defendants do not argue that
6    steps were taken to remove the structural conflict, but merely
7    note that there is no requirement to do so, and that a conflict
8    of interest is only "a factor in determining whether there is an
9    abuse of discretion."  <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S.
10   105, 115 (2008).  Similarly, there is no requirement that the
11   Panel entail neutral decision-makers, but it is a factor in
12   determining the appropriate standard of review.  Accordingly,
13   this factor weighs in favor of a "heightened" abuse of discretion
14   standard of review.

15        Seventh, Plaintiff argues that the Administrator "fail[ed]
16   adequately to investigate a claim or ask the plaintiff for
17   necessary evidence."  <u>Abatie</u>, 458 F.3d at 968.  Specifically,
18   Plaintiff claims that the Administrator "failed to provide a
19   description of any material or information necessary for
20   Plaintiff to perfect his claim" as required by the Plan.  Pl.'s
21   Opp. at 14.  The Plan provides that, if a claim is denied by the
22   Administrator, "the written notification will state specific
23   reasons for the denial, make specific reference to the Plan
24   provision(s) on which the denial is based, and provide a
25   description of any material or information necessary for you to
26   perfect the claim and why such material or information is
27   necessary."  DSOF, Ex. A at 3.  Defendants respond that "the
28   language of the Plan is permissive" and "the Administrator was

15

not under any duty to seek more information from Plaintiff if it did not think it needed more information."  Defs.' Opp. at 10. Plaintiff maintains that the language of the Plan is not, in fact, permissive.  Pl.'s Reply at 6.  The provision, although inartfully drafted, only appears to require this action by the Administrator when more information would be helpful.  While the Plan does state that the Administrator *will* provide this description to Plaintiff, it is limited to "any material or information necessary for [Plaintiff] to perfect the claim[.]" PSOF, Ex. A at 3.  To read the provision otherwise would require an assumption that every claim may be perfected through further information.  This is, of course, not the case, as some claims cannot be salvaged by any additional information.  Accordingly, the Court finds that the Administrator's failure to ask Plaintiff for further evidence was not improper, and this factor weighs against the use of a "heightened" abuse of discretion standard of review.

        Considering all of the above factors and viewing the evidence in the light most favorable to Plaintiff, the Court finds that the totality of the circumstances support a low "level of skepticism" in viewing the Panel's decision to deny Plaintiff's claim.  Abatie, 458 F.3d at 968.  Although a structural conflict of interest existed, the record does not suggest that the Administrator or the Panel allowed that conflict to affect their analysis and ultimate decision in Plaintiff's case.  Therefore, the Court has not employed a "heightened" abuse of discretion standard of review, and instead has applied a "modified" abuse of discretion standard of review, while

16

1  remaining cognizant of the underlying structural conflict of

2  interest.  Sluimer v. Verity, Inc., 606 F.3d 584, 587 (9th Cir.

3  2010).

4         2.   Reasonableness of the Panel's Findings

5         The Panel denied Plaintiff's claim for severance benefits

6  for the following four reasons: (1) Plaintiff did not experience

7  a material reduction in duties and responsibilities; (2) any

8  material reduction in duties and responsibilities was cured by

9  the addition of the Illinois position; (3) Plaintiff's failure to

10  include "material reduction in compensation" in his initial Good

11  Reason Notice precludes him from raising it before the Panel; and

12  (4) Plaintiff did not suffer a material reduction in compensation

13  before he resigned.  PSOF, Ex. M.  Plaintiff argues that each of

14  these four reasons is unreasonable.  Pl.'s Opp. at 15.  Each is

15  discussed in turn, to the extent that they have not already been

16  considered and analyzed above, with regard to the nature and

17  extent of the conflict of interest.

18         Plaintiff argues that the Panel's first reason for denying

19  benefits, i.e. that no material reduction in duties and

20  responsibilities occurred, was unreasonable.  Pl.'s Opp. at 15.

21  Plaintiff makes no additional arguments in support of this

22  contention and relies on those that were made with regard to the

23  extent and nature of the structural conflict, again taking issue

24  with the Panel's finding that Plaintiff's responsibilities and

25  duties were not "sufficiently final."  Pl.'s Opp. at 15.  This

26  argument has been fully considered and discussed above (supra at

27  9-11), and the Court's reasoning is equally applicable here.  For

28  the reasons discussed above, the Panel's finding that no material

reduction in duties and responsibilities occurred was reasonable.

Plaintiff next argues it was unreasonable for the Panel to conclude that any material reduction in duties and responsibilities was cured by the addition of the Illinois position.  Pl.'s Opp. at 16.  Plaintiff's arguments that the Panel did not consider any information on Kansas City, and that it summarily rejected Plaintiff's objections to the Illinois position, have been considered and rejected. (supra at 13-15). Pl.'s Opp. at 16.  Moreover, Plaintiff's attempt to analogize the present case to Sluimer is misplaced.  Pl.'s Opp. at 16 (citing Sluimer v. Verity, Inc., 606 F.3d 584 (9th Cir. 2010)).   In Sluimer, the Ninth Circuit found unreasonable the plan administrator's finding that no material reduction in responsibilities had occurred.  Sluimer, 606 F.3d at 593. However, in Sluimer, there was uncontroverted evidence that: (1) the plaintiff would only manage 15 employees and $5,000,000 in revenue in the new position, as opposed to 100 employees, and $50,000,000 in his original position; (2) the plaintiff would be required to report to a general manager in the new position, as opposed to reporting directly to the CEO in his original position; and (3) the plaintiff would only be involved in sales, as opposed to operations in his original position.  Sluimer, 606 F.3d at 593.  Here, there is no such undisputed evidence.  In fact, the Panel determined that "estimated revenues from Illinois operations exceed[ed] those from Kansas City commercial operations by approximately $500,000."  DSOF, Ex. M at 6.  Thus, the Panel's determination that the Illinois position cured any material reduction in duties and responsibilities was reasonable.

18

1    Plaintiff's third contention is that the Panel's denial of

2    his claim for failure to identify a reduction in compensation in

3    his Good Reason Notice, is unreasonable.  Pl.'s Opp. at 18.

4    Plaintiff notes that the Plan provides that Panel review "will

5    take into account all comments, documents, records and other

6    information submitted by you relating to your claim, whether or

7    not submitted or considered in the initial review of your claim."

8    DSOF, Ex. A at 2.  Defendants respond that Plaintiff only

9    submitted a Good Reason Notice based on "material reduction in

10   duties and responsibilities," and his claim of "material

11   reduction of compensation" is a separate claim and cannot be

12   considered without Good Reason Notice.  Defs.' Opp. at 12.  In

13   relevant part, the Plan defines Good Reason as: "the occurrence

14   of any one or more of the following without your express written

15   consent: (i) material reduction of your authority, duties, or

16   responsibilities as they existed immediately prior to a Change in

17   Control; (ii) material reduction of your base salary, annual

18   bonus opportunity or long-term incentive opportunity as they

19   existed immediately prior to a Change in Control[.]"  DSOF, Ex. B

20   at 3.  Under the terms of the plan, reduced duties and reduced

21   compensation are separate grounds for claiming Good Reason and

22   entitlement to severance.  Although the Plan invites the

23   submission of additional information when seeking Panel review,

24   it is limited to "review of *your claim*," which is ostensibly

25   limited to the basis on which Notice was given.  DSOF, Ex. A at

26   2.  Nevertheless, there is no express requirement in the Plan

27   that the Notice include every basis for a claim of Good Reason

28   resignation.  Similarly, there is no language in the Plan which

1   clearly prohibits raising an additional basis for the first time

2   on Panel review.   Therefore, the Panel's determination that it

3   could not consider Plaintiff's reduction in compensation as a

4   Good Reason was unreasonable.   However, the Panel did in fact

5   consider the merits of Plaintiff's compensation claim, and

6   therefore this error was immaterial to the Panel's ultimate

7   conclusions.

8        Finally, Plaintiff argues that the Panel's fourth reason for

9   denying his claim, i.e. that he did not experience a reduction in

10  compensation, was unreasonable.   Pl.'s Opp. at 19.   Specifically,

11  the Panel concluded that, "at the time of the August 20, 2012

12  Good Reason Notice, there had been no material reduction in

13  [Plaintiff's] base salary, annual bonus opportunity, or long-term

14  incentive opportunity[.]"   DSOF, Ex. M at 5.   The Panel noted

15  that Plaintiff would "not experience any reduction in . . .

16  compensation for the calendar year ending December 31, 2012."

17  Id.   Similarly, the Panel found that, as of August 20, 2012,

18  "Consolidated had yet to determine the specifics of [Plaintiff's]

19  post-2012 compensation package[.]"   Id.   Accordingly, the Panel

20  determined that Plaintiff's "concerns relating to post-2012

21  compensation were unsupported and premature."   Id.

22       The Panel's finding that Plaintiff's 2012 compensation

23  package would remain unchanged was reasonable.   Although

24  Plaintiff did not retain his Kansas City responsibilities, he was

25  scheduled to continue to receive incentive pay from Kansas City,

26  through the end of 2012.   Pl.'s Opp. at 19.   The Panel was

27  entitled to find that his incentive pay would remain

28  substantially the same, despite the fact that he was no longer

1   "in control" of the this territory.   Id.

2         Likewise, it was reasonable for the Panel to conclude that

3   Plaintiff's post-2012 compensation claim was premature.   Although

4   Plaintiff argues that it was "clear to him" that his post-2012

5   compensation would be reduced as a result of losing the Kansas

6   City position, his personal opinion is not relevant to the

7   Court's analysis.  Pl.'s Opp. at 19.   The Panel noted that, as of

8   August 20, 2012, "Consolidated had yet to determine the specifics

9   of [Plaintiff's] post-2012 compensation package, including

10  whether post-2012 adjustments to [his] salary, bonus, or

11  incentive opportunity might be warranted[.]"  DSOF, Ex. M at 5.

12  Moreover, Plaintiff's reliance on the alleged reduction of his

13  stock options from $60,000 to $40,000 is misplaced.  Pl.'s Opp.

14  at 19.  Because Plaintiff's post-2012 compensation was not

15  finalized, the possibility remained that Consolidated would

16  substitute other forms of compensation in his final package.

17  Moreover, Plaintiff would not have been time-barred from bringing

18  a claim for benefits if he had waited until the beginning of

19  2013, because the 90-day clock would not begin to run until the

20  reduction in compensation was finalized.  DSOF, Ex. B at 3.

21  Accordingly, the Panel's determination that Plaintiff had not

22  experienced a material reduction in compensation was reasonable.

23        For all of these reasons, the Administrator's and the

24  Panel's conclusions and ultimate denials of Plaintiff's claim

25  were reasonable.  Even considering the Administrator's and the

26  Panel's structural conflict of interest, neither the

27  Administrator nor the Panel abused its discretion.  Therefore,

28  Defendants' Motion for Summary Judgment is GRANTED and

1  Plaintiff's Motion for Summary Judgment is DENIED.

2

3                          III.   ORDER

4       For the reasons set forth above, the Court GRANTS

5  Defendants' Motion for Summary Judgment and DENIES Plaintiff's

6  Cross-Motion for Summary Judgment:

7       IT IS SO ORDERED.

8  Dated: September 10, 2014

9                                    _____
                                     JOHN A. MENDEZ,
10                                   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              22